UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

MILDRED GOLDEN,

    Plaintiff,

v.              406CV036

AMERIQUEST MORTGAGE
COMPANY,

    Defendant.

## ORDER

### I. INTRODUCTION

In this lender liability case, plaintiff Mildred Golden alleges that defendant Ameriquest Mortgage Company ("Ameriquest") violated, *inter alia*, the Truth in Lending Act (15 U.S.C. § 1601) by failing to make certain disclosures in conjunction with a home loan. Doc. # 1. Ameriquest now moves to dismiss Golden's complaint, arguing that it made all required disclosures and otherwise complied with all applicable rules and regulations. Doc. ## 3, 4. Golden opposes. Doc. ## 11, 16.

### II. BACKGROUND[1]

Golden is an elderly homeowner in Savannah, Georgia. Doc. # 1 ¶ 1. In 2004 she entered into a loan agreement with Ameriquest to refinance the loan on her home and pay off some personal debts. *Id.* ¶ 8. In conjunction with that loan agreement, Ameriquest was required to make certain disclosures to Golden, including accurate descriptions of the amount financed, the finance charges associated with the loan, the annual percentage rate (APR), the number, amount, and timing of payments on the loan, and the total cost of the loan. *Id.* ¶ 12.

Golden's contention, it appears, is not that Ameriquest failed to make any of these disclosures; instead, she alleges that it failed to disclose its intention to pay off a $5,000 lien on her property in conjunction with the loan. *See* doc. # 1 exh. B.[2] She adds that Ameriquest failed to pay off certain other debts of hers that it promised to cover under the loan. *Id.*; doc. # 6 exh. B.

Finally plaintiff argues that the $5,000 payment was an undisclosed "finance charge" associated with the loan. That non-disclosure triggers a re-calculation of the amount financed, total finance charges, and APR on the loan -- thus rendering inaccurate all of Ameriquest's required disclosures at the consummation of the loan. Doc. # 1 exh. B; *id.* ¶¶ 17-33.

Golden therefore seeks rescission of the loan plus statutory and common law damages. Doc. # 1. Ameriquest moves to dismiss the complaint, arguing that it made all required disclosures and that plaintiff is simply incorrect in her characterization of the $5,000 payment. Doc. ## 3, 4, 14; doc. # 5 exh. A (Truth-in-Lending Disclosure Statement).

---

[1] At this motion-to-dismiss stage, the Court accepts as true the allegations in Golden's complaint. *Next Century Comm. Corp. v. Ellis*, 318 F.3d 1023, 1025 (11th Cir. 2003) (citation omitted).

[2] Golden repeatedly insists that the $5,000 lien on her property was one she "did not need to pay." Doc. # 1 exh. B at 1; doc. # 11 at 2, 3, 8; doc. # 16 at 4-7. Her only attempt to articulate why the lien did not need to be paid off is that it was "in the form of a grant." Doc. # 11 at 2.

## III. ANALYSIS

### A. Standard on Motion to Dismiss

On a motion to dismiss under Fed.R.Civ.P. 12(b)(6), "[t]he plaintiff's factual allegations are accepted as true. Dismissal is not appropriate unless it is plain that the plaintiff can prove no set of facts that would support the claims in the complaint." *Next Century*, 318 F.3d at 1025 (citation omitted). "In essence, the movant says, 'Even if everything you allege is true, the law affords you no relief.'" *U.S. v. Blue Cross Blue Shield of Ga., Inc.*, 755 F.Supp. 1040, 1046 (S.D.Ga. 1990). However, "conclusory allegations, unwarranted factual deductions, or legal conclusions masquerading as facts will not prevent dismissal." *Next Century*, 318 F.3d at 1025.

A Rule 12(b)(6) motion challenges only the sufficiency of the complaint. Yet any written instrument which is an exhibit to a pleading is also a part of that pleading. Fed.R.Civ.P. 10(c). Thus, the Court will consider the two exhibits attached to Golden's complaint as parts of her complaint. Doc. # 1 exhs. A, B.

Additionally, the Court may consider any undisputed documents attached to the defendant's motion to dismiss "if they are referred to in the complaint and are central to the plaintiff's claim." *Brooks v. Blue Cross and Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997); *see also GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384-85 (10th Cir. 1997). If the rule were otherwise, a plaintiff could defeat a motion to dismiss simply by failing to attach the critical document on which her complaint relies. *GFF Corp.*, 130 F.3d at 1385.

Thus, the Court will also consider the Truth-in-Lending Disclosure Statement filed along with the defendants' original motion to dismiss. Doc. # 6 exh. A; doc. # 1 ¶¶ 8-12, 18, 28-29 (plaintiff's allegations of defendant's failure to make sufficient disclosures).

### B. TILA Claim

In Count I of her complaint, Golden alleges that Ameriquest violated TILA, 15 U.S.C. § 1638, and the related Regulation Z, 12 C.F.R. § 226.23, by failing to make accurate disclosures in conjunction with a home loan. Doc. # 1 ¶¶ 17-25. Golden's position is that Ameriquest paid off a $5,000 lien to the City of Savannah without disclosing its intention to do so; she adds that Ameriquest's payment of that lien was of no benefit to her because it did not need to be paid. Doc. # 1 exh. B; # 11 at 2.

She in effect argues, then, that Ameriquest's payment of the city's lien is tantamount to an impermissible finance charge within the meaning of 12 C.F.R. § 226.4(a) (defining finance charge to include "any charge payable directly or indirectly by the consumer") and 12 C.F.R. § 226.4(e)(3) (permitting a lender to exclude from the finance charge any "[t]axes and fees prescribed by law that actually are or will be paid to public officials for ... perfecting, releasing, or satisfying a security interest" -- *if* those fees are "itemized and disclosed"). Golden also alleges that Ameriquest failed to pay some of the debts it contracted to pay under the loan agreement. Doc. # 1 ¶¶ 39-45, 52, 53; *id.* exh. B; doc. # 6 exh. B (Form HUD-1 listing anticipated "Disbursements to Others" including $4,499 to CitiFinancial, $69,000 to Carver State, $128 to Wal-Mart, $10,600 to Rich's/FDSB, and $183.55 for City of Savannah Taxes).

Congress enacted TILA "to assure a

2

meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair billing and credit card practices." 15 U.S.C. § 1601(a). To this end, TILA requires creditors to disclose clearly and accurately to consumers any charge that the consumer will bear under the credit transaction, including all finance charges, the total amount financed, and the APR. *See* 15 U.S.C. § 1638(a); 12 C.F.R. § 226.6. These disclosure requirements are designed to prevent creditors from circumventing TILA's objectives by burying the cost of credit in the price of goods sold. *Mourning v. Family Publ'ns Serv.*, 411 U.S. 356, 364 (1973).

Here there is no doubt that Ameriquest disclosed the "amount financed," the total "finance charges," the "annual percentage rate," the "total of payments," and the number, amount, and timing of all payments under the loan agreement at the consummation of the loan. *See* doc. # 6 exh. A (TILA Disclosure Statement signed by plaintiff); doc. # 1 exh. A (Form HUD-1A). Thus, the only way in which Golden would have a valid TILA claim would be if she properly alleged that those disclosures were inaccurate. *Bragg v. Bill Heard Chevrolet, Inc.*, 373 F.3d 1060, 1063-68 (11th Cir. 2004) (interpreting TILA broadly, emphasizing that claims should be considered in light of statute's purpose of protecting borrowers).

The body of Golden's complaint makes no such allegations of specific, inaccurate disclosures. *See* doc. # 1 ¶¶17-25. However, in a letter attached to her complaint she alleges that Ameriquest's initial disclosures were rendered inaccurate by its $5,000 payment to the city of Savannah -- a payment made *subsequent* to the consummation of the loan. *Id.* exh. B at 2. That payment, she alleges, should not have been included in the "amount financed" but was instead a finance charge. Consequently, Ameriquest's disclosures overstated the amount financed and understated the finance charges and APR. *Id.*

Under 12 C.F.R. § 226.9(c), a lender is required to disclose any change in the terms (such as the finance charges or APR) previously disclosed in accordance with § 226.6. *See also* 12 C.F.R. § 226.5(e) (event subsequent to consummation of loan that makes previous disclosures inaccurate does not create TILA violation *unless* § 226.9(c) requires a new disclosure).

Therefore, if Ameriquest's $5,000 payment to Savannah was a "finance charge," then it should have been disclosed, and Ameriquest's failure to do so -- in either the initial disclosure or a subsequent one -- would make it an impermissible finance charge in violation of TILA. Arguing against this result, Ameriquest cites to *Smith v. Fidelity Consumer Discount Co.*, 898 F.2d 896, 906 (3rd Cir. 1980), which held that a lender did not have to count as a finance charge any payments made to satisfy prior liens on a borrower's property. The problem with relying on *Smith*, however, is that it applies only to payment of debts that the lender *disclosed at the consummation of the loan. Smith*, 898 F.2d at 906 ("In holding that Fidelity did not have to include the prior debts in its finance charge calculus, this Court is not allowing Fidelity to avoid disclosure of the charges. In fact, each of the charges was accurately disclosed on the TILA disclosure form in the section entitled 'itemization of amount financed').

Here, on the other hand, Ameriquest never

3

disclosed its intention to pay off the prior $5,000 lien. *See* doc. # 1; # 6 exhs. A, B. Accordingly, Golden may be able to gain relief against Ameriquest under TILA, in that this Court does not find her claim to fall outside the reach of 12 C.F.R. § 226.4(e)(3) (permitting a lender to exclude from the finance charge any "[t]axes and fees prescribed by law that actually are or will be paid to public officials for ... perfecting, releasing, or satisfying a security interest" -- *if* those fees are "itemized and disclosed").[3]

Nonetheless, Ameriquest is correct -- and Golden agrees, doc. # 16 at 2 -- that the 1-year statute of limitations for statutory damages under TILA (15 U.S.C. § 1640(e)) has run. Golden is therefore entitled only to rescission under 15 U.S.C. § 1635(f) if she succeeds on this claim.

### C. HOEPA Claim[4]

In Count II, Golden alleges that Ameriquest violated HOEPA's requirement that a lender must make special disclosures when a loan's "points and fees" exceed 8% of the total loan amount. Doc. # 1 ¶¶ 26-33; *see* 15 U.S.C. § 1639; 12 C.F.R. § 226.32(a), (c). In response, Ameriquest makes the same argument that it made as to Golden's TILA claim: the alleged $5,000 payment to Savannah was not a finance charge, so its occurrence could not have rendered the initial disclosures inaccurate. Doc. # 4 at 10-11.

Ameriquest's argument for dismissing the HOEPA claim suffers from the same defect as its TILA argument. Under 12 C.F.R. § 226.4(a), "finance charges" include all charges payable directly or indirectly by the consumer. As mentioned above, section 226.4(e) permits the lender to exclude from the finance charges any charge related to "perfecting, releasing, or satisfying a security interest" -- *if* such charge is itemized and disclosed. 12 C.F.R. § 226.4(e)(1); *see also Smith*, 898 F.2d at 906-07.

HOEPA requires specific disclosures beyond the provisions of TILA. *See* 12 C.F.R. § 226.32(c) (requiring a special notice to the borrower concerning the risks of taking a mortgage). Just like TILA, it requires disclosure of all items required to be disclosed under 12 C.F.R. § 226.4(a). *Id.* § 226.32(b)(1)(i). And again -- just like TILA -- the $5,000 payment to Savannah could only be excluded from the finance charges if it was "itemized and disclosed." *Id.* § 226.4(e).

Thus, from the face of the pleadings Golden could prove a set of facts in which the $5,000 payment should have been labeled a "finance charge." It follows that she could prove a set of facts in which the "points and fees" on her loan exceeded 8%, triggering the required HOEPA disclosures under 12 C.F.R. § 226.32(c). *See* doc. # 11 at 15 (brief) (illustrating that points and fees far exceed 8% of loan amount when $5,000 payment of lien is treated as finance charge). Therefore, Ameriquest's motion to dismiss Golden's HOEPA claim must be denied.

### D. ECOA Claim[5]

In Count III, Golden alleges that Ameriquest violated the ECOA by failing to give an explanation of why it would not grant credit to her on the terms she requested. Doc. # 1 ¶¶ 34-37; *id.* exh. B. Under the ECOA, the lender must notify in writing any applicant for credit of any action taken on the application. 15 U.S.C.

---

[3] *Smith* held lenders to the same rule: a lender may exclude such payments of prior debts, but only if those payments are disclosed. *See Smith*, 898 F.2d at 906.

[4] The Home Ownership and Equity Protection Act of 1994, 15 U.S.C. §§ 1602(aa) and 1639.

[5] The Equal Credit Opportunity Act, 15 U.S.C. § 1691.

§ 1691(d). If the lender takes an "adverse action" with respect to the application, it must provide the applicant a statement of reasons for the action. *Id.* In this context, "adverse action" includes not only a denial of credit but also "a change in the terms of an existing credit arrangement." *Id.* § 1691(d)(6); *see also* 12 C.F.R. § 202.2(c).

Golden does not argue here that Ameriquest denied her credit application. Instead, she argues that Ameriquest's "execution" of the loan in a manner different from that specified in the disclosures constitutes the "adverse action" necessary to support her ECOA claim. Doc. # 11 at 17, 22 (citing Ameriquest's $5,000 payment to Savannah and failure to pay other debts in contract). The Court agrees that Golden has stated an ECOA claim based on her allegation that Ameriquest made an unfavorable change in the terms of an existing credit arrangement without first giving notice. 15 U.S.C. § 1691(d)(6); 12 C.F.R. § 202.2(c).

### E. Breach of Contract Claim

In Count IV, Golden alleges that Ameriquest breached the loan contract by paying the $5,000 lien (which was not specified on the HUD form) while failing to pay debts that *were* specified on the HUD form. Doc. # 1 ¶¶ 38-40; *id.* exh. B. Ameriquest complains vaguely that it "is not aware that the HUD-1 [form] is in and of itself a contract," but it does not argue that attaching a contract is a requirement for a breach of contract action, nor does it even deny that it entered into a contract with Golden. *See* doc. ## 4, 14 (defendant's briefs, which do not deny the existence of a contract or raise any other defenses to breach of contract action, such as Statute of Frauds); *see also* O.C.G.A. §13-3-1 (elements of valid contract).

Thus, at this time the Court must deny Ameriquest's motion to dismiss, for Golden has pled facts on which she could base a breach of contract claim (namely, that she had a loan contract with Ameriquest and that Ameriquest breached that contract by paying off the city's lien while failing to pay off other, contracted-for debts). Doc. # 1 exh. B; *see also Cline v. Lee,* 260 Ga.App. 164, 168 (2003).

### F. Fraud by Concealment Claim

In Count V, Golden alleges that Ameriquest committed fraud by concealment when it used loan proceeds to pay off the city's $5,000 lien rather than the debts specified on the HUD form. Doc. # 1 ¶¶ 41-54. Ameriquest moves to dismiss the claim, arguing that Golden has failed to (a) satisfy F.R.Civ.P. 9(b)'s heightened pleading requirements and (b) plead the elements of fraud under Georgia law. Doc. # 4 at 15-16.

Under Rule 9(b), a plaintiff making a fraud claim must set forth:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Ziemba v. Cascade Int'l, Inc.,* 256 F.3d 1994, 1202 (11th Cir. 2001) (citation omitted).

While Golden's sparse complaint may or may not satisfy *Ziemba*'s first 3 prongs, it surely does

Case 4:06-cv-00036-BAE-GRS   Document 19   Filed 07/19/06   Page 6 of 6

not state "what [Ameriquest] obtained as a consequence of the fraud." Nor is it conceivable that Ameriquest would have "defrauded" Golden so that it could pay off a debt it believed *she* owed on her property. Golden's only effort to clear this hurdle is to allege that "Ameriquest suppressed [its payment to Savannah] for the purpose of obtaining an advantage or benefit over Ms. Golden." Doc. # 1 ¶ 45. However, she does nothing to elaborate on what that "advantage" might have been. Rule 9(b)'s heightened standard requires more than this, so Golden's claim for fraud by concealment must be dismissed. *See Ziemba*, 256 F.3d at 1208-09 (finding that plaintiff failed to satisfy Rule 9(b) where he alleged publication of inaccurate accounting figures without alleging scienter or gain to defendant).

### G. Fair Business Practices Act Claim

Finally, Ameriquest argues that Golden's claim under Georgia's Fair Business Practices Act ("the FBPA") is inapplicable to these facts and must be dismissed. Doc. # 4 at 17-23. Golden agrees. Doc. # 11 at 2. Thus, count VI of Golden's complaint (the FBPA claim) is also dismissed.

### IV. CONCLUSION

Accordingly, defendant Ameriquest Mortgage Company's motion to dismiss is ***GRANTED IN PART*** and ***DENIED IN PART***. Doc. # 3. Golden's dismissed claims (Counts V and VI) are ***DISMISSED WITH PREJUDICE***.

This 19th day of July, 2006.

B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

6